**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**(LAKE CHARLES DIVISION)**

| | |
|---|---|
| **THE PARISH OF CAMERON, ET AL.**<br>**Plaintiffs**<br><br>**v.**<br><br>**ANADARKO E&P ONSHORE, LLC, ANDERSON EXPLORATION COMPANY, INCORPORATED, CENTURION EXPLORATION COMPANY, CHEVRON U.S.A., INC., CONOCOPHILLIPS COMPANY, DAVIS OIL COMPANY, DEVON ENERGY PRODUCTION COMPANY, L.P., DOMINION OKLAHOMA TEXAS EXPLORATION & PRODUCTION, INC., EXXON MOBIL CORPORATION, FREEPORT-MCMORAN OIL & GAS L.L.C., HILLIARD PETROLEUM INC., LINDER OIL COMPANY, A PARTNERSHIP, MOSAIC GLOBAL HOLDINGS, INC., THE LOUISIANA LAND AND EXPLORATION COMPANY, LLC, AND VINTAGE PETROLEUM, L.L.C**<br>**Defendants** | **Civil Action No. ____________**<br><br>**Section: __________**<br><br>**Judge: Hon. _________**<br><br>**Mag. Judge: Hon. ____________** |

## NOTICE OF REMOVAL

Defendant Devon Energy Production Company, L.P., with a full reservation of rights, defenses, objections, and exceptions, hereby removes to this Court, pursuant to 28 U.S.C. §§ 1367, 1441 and 1442, the above-captioned civil action bearing the number 10-19578 in the 38th Judicial District Court for the Parish of Cameron, State of Louisiana.

### Introduction

1. This docket of cases alleges sweeping violations of The State and Local Coastal Resources Management Act of 1978, La. R.S. 49:214.21 *et seq*. ("SLCRMA"). SLCRMA enacted

a coastal use permitting ("CUP") program in response to the federal Coastal Zone Management Act of 1972, which offered financial incentives to states who would adopt coastal management programs. Obviously, the federal government did not intend for Louisiana to weaponize its program, decades after-the-fact, against an industry that was and is vital to national security, economic well-being, and quality of life for all Americans. But this is what Plaintiffs have done.

2. Plaintiffs' legal theories about what operations violated SLCRMA are idiosyncratic and contrary to decades of regulatory practice and guidance. A recent decision from the United States Supreme Court validates that removal is appropriate in this case and is the first ground for federal officer jurisdiction under 28 U.S.C. § 1442 raised herein.

3. Separately, new 2026 expert reports issued in a directly related case on nearly adjacent property provide distinct grounds for removal. Those reports reveal a new theory of liability dependent upon a federal contract with the Department of the Interior; this is the second ground for federal officer jurisdiction under 28 U.S.C. § 1442 raised herein.

## I. Federal Officer – *Chevron* Opinion

4. On April 17, 2026, the Supreme Court of the United States issued its decision in Case No. 24-813, *Chevron USA Inc. v. Plaquemines Parish, Louisiana*, 608 U.S. __, 2026 WL 1040461 (the "*Chevron* Opinion").

5. The *Chevron* Opinion vacated the Fifth Circuit's affirmance of two related orders remanding parish lawsuits against Chevron to Louisiana state court because the two lawsuits involved activities "for or relating to" acts under color of federal office and thereby satisfied the federal officer removal statute. *See* 28 U.S.C. § 1442(a)(1).

6. The *Chevron* Opinion interpreted a 2018 expert report ("2018 Report," Case 2:18-cv-689 ECF Nos. 1-1 to 1-6, W.D. La. May 23, 2018) that the Supreme Court recognized to

"reflect[] the parishes' general theories of liability across the 42 suits," including in this suit. Chevron Opinion at *5. Plaintiffs' 2018 Report attributes coastal land loss to wartime practices that allegedly caused systemic, region-wide cumulative forces including "altered hydrology due to the proliferation of dredged canals and deep-well fluid withdrawal associated with the oil and gas industry." 2018 Report at -00005.

7. The Supreme Court characterized the oil and gas industry as operating urgently, in an "all hands-on deck, wartime context" to produce "more crude oil as quickly as possible to facilitate more avgas refining" in coastal Louisiana. *Chevron* Opinion at *7. The 2018 Report shows that the parish lawsuits broadly challenge these practices as causing land loss across the coast.

8. While the Parishes have recently sought to characterize their suits as each limited to operations within a chosen polygon, drawn by Plaintiffs' counsel for litigation purposes, the 2018 Report demonstrates the opposite. The Report expressly alleges that "[h]ydrologic impacts extend beyond case area boundaries,"[1] 2018 Report at -00055, and attributes land loss across Louisiana's coastal zone to the same wartime practices the Supreme Court found "related to" the Removing Defendants'[2] work on behalf of the federal government: using "vertical-drilling methods [that] 'maximize[d] production' of crude oil," canals that "saved 'time, materials, and manpower,' resulting in more 'timely oil production,'" and "earthen pits [that] complied with the [Government's] directive to preserve steel." *Chevron* Opinion at *7.

[1] The 2018 Report further alleges that the continued operation of canals and disposal features "contributed to and/or caused hydrologic changes . . . within *and beyond the boundaries of the Bayou Gentilly case area*," and that "[a]ll of these activities cumulatively led to significant wetland, habitat and marine productivity losses within *and beyond the Bayou Gentilly case area*." 2018 Report at -00039 (emphases added).

[2] The term "Removing Defendants" refers to the defendants who removed the *Chevron* case.

9. The Parishes' theories of land loss causation posit that the challenged practices, which began during wartime, caused widescale land loss across the Coast, including in this case area. Plaintiffs' suit is thus squarely related to the same wartime coastal production practices the Supreme Court assessed in the *Chevron* Opinion.

10. Devon is entitled to federal-officer jurisdiction in this case, as in *Chevron USA Inc. v. Plaquemines Parish, Louisiana*, because activities in both cases related to the defendants' wartime work for the federal government are alleged to have caused region-wide forces extending "beyond case area boundaries" to cause the land loss for which Plaintiffs seek to recover here.

11. The Supreme Court's ruling thus provides Devon the right to remove this action to federal court. In the *Chevron* Opinion, the Supreme Court explained that "relating to," as used in the statute, "sweeps broadly" and requires only that the connection between the suit and acts under color of federal office not be "tenuous, remote, or peripheral." *Chevron* Opinion at *6. The Supreme Court applied that rule to two parish lawsuits attacking operators' oil production activities (*e.g.*, vertical drilling, canals, earthen pits) and held that those activities were "related to" the defendants' government refining contracts because they allowed the defendants to increase their production of crude oil, the "essential feedstock" of the aviation gasoline ("avgas") being refined under the contracts. *Id.* at *7.

12. The Supreme Court found this connection easily satisfied under the "broad[]" "relating to" standard even though oil production and refining occurred in different places; even though the refining contracts did not specify where or how to fulfill the contract or to obtain crude oil; and even though the refiners did not control where the oil they refined came from, including whether it was their own crude oil or another producer's.

13. Importantly, the Supreme Court expressly rejected Louisiana's contention that removal requires the defendant to have been "acting under" in taking the specific crude oil production actions challenged in the suit. *Chevron* Opinion at *8. The Court explained that the removal statute "contemplates removal of suits against officers or their agents for acts that were *not* done under color of their offices, so long as the suits 'relat[e] to' such acts," and it rejected Louisiana's effort to conflate the "acting under" element with the "for or relating to" element. *Id.* (emphasis added). Ultimately, as the Supreme Court held, "producing crude oil relates to refining it into avgas" and thereby satisfies that prong of the federal officer removal test. *Id.* at *7.

14. In clarifying how the facts of these coastal parish suits fit within federal officer jurisdiction, the Supreme Court has rejected the geographic formalism and other causal limitations that the Fifth Circuit and district courts had used to improperly reject federal officer jurisdiction. Because the Plaintiffs' 2018 Report establishes that the very production practices giving rise to their theories of land-loss causation—practices the Supreme Court has now recognized are linked to wartime federal contracts—caused harm extending well beyond any particular polygon, the boundaries of the Plaintiffs' designated Operational Area cannot defeat removal.

15. The *Chevron* Opinion thus sets forth a new basis for removal and is controlling on the removal question here. Under the Supreme Court's reasoning, Devon satisfies each disputed element of the federal officer removal statute. Relevant oil producers "acted under" a federal officer pursuant to contracts with the federal government to refine avgas and other war products during wartime—like the contracts the Supreme Court considered in the *Chevron* Opinion. *See Chevron* Opinion at *4; *see generally* Gravel Declaration (Case No. 2:18-cv-677, ECF No. 170-2, and as amended, W.D. La. Oct. 2021) (describing further examples of such federal contracts). Exploration for and production of crude oil in the Louisiana Coastal Zone during wartime "relates

to" those federal contracts. *See Chevron* Opinion at *5, *7. Devon is therefore entitled to a federal forum in which to present its colorable federal defenses, including preemption, due process, and immunity, among others.[3]

16. This removal is timely under 28 U.S.C. § 1446. The *Chevron* Opinion is an "order or other paper" permitting removal under 28 U.S.C. § 1446(b). *See Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 268 (5th Cir. 2001) (holding that an order justified removal in a similar case, such as where a case "involv[ed] the same defendants, and a similar factual situation and legal issue"). This case involves a similar factual situation and the same legal issue that the Supreme Court decided in the *Chevron* Opinion. Accordingly, removal is timely. *See id.*

**II. Federal Officer – Rockefeller Deed**

17. This case concerns Devon's operations in an area of Crab Lake, one of the many polygons drawn by Plaintiffs' counsel for litigation purposes. The boundary of Plaintiffs' designated Crab Lake Operational Area is near the Plaintiffs' designated Deep Lake Operational Area, the area that is the subject of the *Cameron v. Burlington* case. The only reason the two operational areas are separated in these cases is because of the pointless polygon boundaries that Plaintiffs made up. Estuarine systems connect the two areas. As the Supreme Court has recognized and Plaintiffs' own 2018 Report established, the production practices giving rise to Plaintiffs' theories of land-loss in the two operational areas are connected and cannot be limited by the boundaries of Plaintiffs' polygon delineation. As such, federal officer jurisdiction over Devon's operations in both cases is not limited by Plaintiffs' attempts to rely on geographic formalism.

---

[3] Devon incorporates by reference, as if fully restated here, the prior Notices of Removal, as well as jurisdictional briefing in this and the related parish cases. *See Case Nos. 2:16-cv-00542 (W.D. La.), 2:18-cv-00689 (W.D. La.), and the related cases described in the attachment to the Civil Cover Sheet.*

18. On April 20 and 21, 2026, Plaintiffs in *Cameron v. Burlington* served defendants with new expert reports which announced a theory of liability based on a federal contract under which defendants acted when conducting their mineral operations—namely, the Rockefeller Deed, a contract held by the U.S. Department of the Interior since 1944. Devon is a defendant in the *Burlington* matter. Plaintiffs invoke the Deed, associated Rules to enforce the Deed, and the mineral leases subject to the Deed as bases for liability in this lawsuit.

19. Plaintiffs' expert report states that the *Burlington* defendants' obligations flow directly from the Deed. "When the Rockefeller Foundation donated its land in 1919 to create a wildlife refuge, the deed (the "Rockefeller Deed") required the state to minimize the negative impact of mineral activities or risk forfeiting the land. As a result, mineral leases issued in the refuge required lessees to follow a set of 'mineral rules and regulations' intended to protect the refuge."[4]

20. In 1944, the United States acquired Rockefeller's rights in the Deed. The Department of the Interior ("DOI") retains that interest today. Pursuant to a 1988 Memorandum of Agreement between the DOI and the Louisiana Department of Wildlife & Fisheries, the DOI shall periodically inspect the property to assure that the conditions of the Deed are carried out by the donee, illustrating the DOI's "subjection, guidance, or control" (*see Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151 (2007)) over *Burlington* defendants' operations on the Refuge.

21. The parties in *Burlington* will dispute whether defendants' operations taken under the Deed violated the Deed or furthered the Deed's objectives. By way of illustration, a 2011 report submitted to the DOI stated,

> RWR [Rockefeller Wildlife Refuge] is an excellent example of how conscientious mineral development can be compatible with wildlife management. Negative

[4] Ex. 1, Robert Verchick Expert Report dated April 20, 2026, at p. 22.

> environmental impacts of drilling have been minimized due to a cooperative relationship between wildlife managers and mineral production companies. The importance of revenues generated from mineral leases on the RWR cannot be overstated; they are used for wildlife research, habitat management/enhancement, to purchase/repair refuge equipment, land acquisition, and salaries. Therefore, the responsible production of new wells is encouraged due to the lasting benefits the revenues will have for conservation on the refuge.[5]

Despite this high praise, Plaintiffs now indict the same production that was encouraged on the Refuge and the surrounding areas and used to carry out the Deed's objectives of research and habitat enhancement.

22. The nature of the Deed and of Plaintiffs' claims based upon it concede that defendants operating in the *Burlington* geographical area [the Deep Lake Operational Area] were bound by and therefore acting under DOI requirements during their operations and that the lawsuit is "for or relating to" those acts. *See* 28 U.S.C. § 1442(a)(1).

23. The violations and damage theories alleged by Plaintiffs in the *Burlington* operational area, which were directly related to efforts to assist the Rockefeller Wildlife Refuge in maintaining its water management system, are so broad as to implicate surrounding operational areas, including the operational area that is the subject of this case.

24. The 2026 expert reports in *Burlington* confirm the artificiality of the case polygon, expressly including land loss beyond those borders and proposing remediation miles distant from the designated operations.

25. Because the Supreme Court has rejected geographic formalism and other similar limitations that the Fifth Circuit and district courts used to improperly reject federal officer jurisdiction, there is no distinction between the adjacent Crab Lake and Deep Lake operational

[5] Ex. 2 (Received in FOIA return DOI-FWS-2024-000404-434).

areas. As such, Devon is entitled under U.S.C. § 1442(a)(1) to a federal forum in which to present its colorable federal defenses.

**III. Federal Officer – DOI and NOAA Projects**

26. Plaintiffs' expert reports received by defendants in *Cameron v. Burlington* on April 20, 2026, provide a separate basis for federal officer removal in this case. *See Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 372–73 (5th Cir. 2021) (holding the Plaintiffs' expert reports revealing their "theory of liability" are "other papers" that restart the § 1446(b)(3) clock). Those reports make clear that the *Burlington* lawsuit targets activities conducted by defendants while assisting the federal government. *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 414 (5th Cir. 2024) ("[T]he federal officer removal statute allows federal officers, and private entities assisting them, to remove cases to federal court that ordinarily would not be removable.")

27. The federal government, through National Oceanic and Atmospheric Administration ("NOAA")—and specifically the National Marine Fisheries Service ("NMFS")—and the United States Fish and Wildlife Service ("USFWS"), oversees and promotes the preservation of fish and wildlife habitats at Rockefeller Wildlife Refuge in coordination with state officials.

28. In line with that federal interest, Devon (who is a defendant in the Burlington matter) and its predecessors and related entities performed extensive projects to promote the preservation of fisheries and wildlife habitats both in the Refuge and surrounding areas such as Crab Lake, including repair and improvement projects intended to support the estuarine area's water management system and associated canal levees. These activities were requested, directed, and supervised by federal officers directly or indirectly through state Refuge employees and were not restricted to improvements related solely to the Rockefeller Refuge. These activities both

directly and indirectly impacted conditions in Crab Lake, the operational area focused on in this case.

29. Through these activities, Devon and its predecessors and related entities assisted the federal government in carrying out activities that further a federal interest. In this sense, the defendants in *Burlington* acted under federal authority when they stepped in the federal government's shoes to assist it in performing preservation projects to further the federal interest. *See Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 347 (5th Cir. 2024) (explaining that the acting under prong is satisfied when a private company "helps the Government perform a job that . . . the Government itself would have had to perform, and that relationship involves 'detailed regulation, monitoring, or supervision'" (quoting *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 153–54 (2007))).

30. Devon also presents two additional colorable federal defenses, including the lawsuit's reliance on an improper interpretation of SLCRMA in its attempt to hold Devon liable for failure to secure permits for activities legally commenced before 1980. *Cf. Caris MPI, Inc.*, 108 F.4th at 346 (noting a defense is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous" (internal quotations omitted)).

31. First, the Plaintiffs' lawsuit relies on an interpretation of SLCRMA's Grandfather Clause that the Fifth Circuit has held is invalid. *See New Orleans City v. Aspect Energy, L.L.C.*, 126 F.4th 1047, 1052–55 (5th Cir. 2025).

32. Second, the Plaintiffs' reinterpretation of SLCRMA's Grandfather Clause subjects a new class of activities to the program's permitting requirement.

33. Under CZMA, this reinterpretation must be approved by NOAA or else it has no effect. That the Plaintiffs have ignored CZMA but still attempt to enforce its amendment is an ultra vires attempt at amending the CZMA-reliant Coastal Management Program ("CMP") without NOAA's approval. *See AES Sparrows Point LNG, LLC v. Smith*, 527 F.3d 120, 126–27 (4th Cir. 2008) (explaining that, under the CZMA, a State must submit any amendment to its CMP to NOAA for that change in program to become effective).

34. As explained above, Plaintiffs' expert reports allege that oil and gas operations caused region-wide forces extending "beyond case area boundaries" to cause land loss for which Plaintiffs seek to recover here. As such, the actions of defendants in the *Burlington* operational area while acting under NOAA's authority and the reinterpretation of the CZMA by Plaintiffs are similarly not restricted by the operational boundaries that Plaintiffs attempt to draw in these cases. Devon is entitled under U.S.C. § 1442(a)(1) to a federal forum in which to present its colorable federal defenses.

## IV. Preservation of Other Grounds

35. Further, other grounds for removal may apply. In an abundance of caution, Devon does not waive and expressly re-urges the removal grounds asserted in the prior Notices of Removal in Case No. 2:16-cv-00542 and Case No. 2:18-cv-00689, including (1) Outer Continental Shelf Lands Act ("OCSLA"), 42 U.S.C. § 1349(b)(1); (2) general maritime law; (3) diversity jurisdiction; and/or (4) federal officer jurisdiction such as without limitation by "acting under" or pursuant to a special relationship with the federal government, 28 U.S.C. § 1442. Devon asserts these grounds and incorporates the prior briefing and arguments in those matters, as if fully restated here.

36. In addition, the Court should exercise supplemental jurisdiction. Section 1367 confers "a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). "The last sentence of § 1367(a) makes it clear that the grant of supplemental jurisdiction extends to claims involving joinder or intervention of additional parties." *Id.* Devon respectfully asks the court to exercise its supplemental jurisdiction over any claims deemed not to be within the court's original jurisdiction.

37. For those reasons, Devon respectfully removes this case pursuant to 28 U.S.C. §§ 1367, 1441 and 1442.

38. A copy of process, pleadings, and orders served upon Devon is attached as Ex. 3 (*in globo*), and Devon will supplement with the certified state court record.

39. Pursuant to 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, Devon will provide all adverse parties with written notice of the removal and file a copy of the Notice of Removal with the appropriate State court Clerk.

Respectfully submitted,

s/ Esteban Herrera, Jr.
Esteban Herrera, Jr. (#20859)
Victor J. Suane, Jr. (#31337)
Andre Bellefontaine (#40273)
Esteban.herrera@keanmiller.com
Vic.suane@keanmiller.com
Andre.bellefontaine@keanmiller.com
**KEAN MILLER LLP**
Post Office Box 3513
Baton Rouge, Louisiana 70821-3513
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

**And**

Claire E. Juneau (#33209)
claire.juneau@keanmiller.com
**KEAN MILLER LLP**
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
Telephone: (504) 585-3050

***Attorneys for Devon Energy Production Company, L.P.***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2026, a copy of the above and foregoing Notice of Removal was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Esteban Herrera, Jr.